[Cite as *State v. McGowan*, 2010-Ohio-1309.]

STATE OF OHIO, JEFFERSON COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO, | ) | |
| | ) | CASE NO. 09 JE 24 |
| PLAINTIFF-APPELLEE, | ) | |
| | ) | |
| - VS - | ) | OPINION |
| | ) | |
| TRACY J. MCGOWAN, | ) | |
| | ) | |
| DEFENDANT-APPELLANT. | ) | |

CHARACTER OF PROCEEDINGS:     Criminal Appeal from Common Pleas
                             Court, Case No. 09CR19A.

JUDGMENT:                    Affirmed.

APPEARANCES:
For Plaintiff-Appellee:       Attorney Thomas Straus
                             Jefferson County Prosecutor
                             Attorney Jane M. Hanlin
                             Assistant County Prosecutor
                             Jefferson County Justice Center
                             16001 State Route 7
                             Steubenville, OH  43952

For Defendant-Appellant:      Attorney Eric Reszke
                             Suite 810
                             Sinclair Building
                             Steubenville, OH  43952

JUDGES:
Hon. Mary DeGenaro
Hon. Gene Donofrio
Hon. Cheryl L. Waite

                             Dated:  March 26, 2010

DeGenaro, J.

{¶1}   This timely appeal comes for consideration upon the record in the trial court and the parties' briefs.  Appellant, Tracy McGowan appeals the June 5, 2009 decision of the Jefferson County Court of Common Pleas that imposed two consecutive twelve month sentences subsequent to a jury finding of guilty on two counts of trafficking in cocaine in violation of R.C. 2925.03(A)(1)(C)(4), fifth degree felonies under R.C. 2925.03(C)(4)(a), with a forfeiture specification.

{¶2}   McGowan argues that his convictions were against the manifest weight of the evidence, that the trial court abused its discretion by not completely following the guidelines of R.C. 2929.11 and R.C. 2929.12 when determining McGowan's sentence, and that there was no competent credible evidence supporting the forfeiture of $500.00.  Upon review, McGowan's arguments are meritless.

{¶3}   The jury did not lose its way in deciding that McGowan coordinated or conducted two crack cocaine sales with an informant during controlled buys that were observed and recorded by police.  The trial court's statements in the sentencing hearing and decision indicated that it considered R.C. 2929.11 and R.C. 2929.12 before imposing maximum consecutive sentences, and the failure to explicitly explain certain factors within the sentencing guidelines did not constitute an abuse of discretion.  Finally, although there were some factors weighing against the forfeiture, there were other factors which constituted some competent credible evidence supporting the decision to forfeit $500.00 of the money seized from McGowan at the time of his arrest.  Accordingly, the decision of the trial court is affirmed.

### Facts and Procedural History

{¶4}   Shortly before December 5, 2008, the Jefferson County Drug Task Force was contacted by a West Virginia police department with information indicating that McGowan was a crack cocaine dealer.  The West Virginia police department had arrested Helissa Byers for passing a counterfeit bill, and Byers indicated that McGowan regularly sold her crack cocaine in Steubenville.  In consideration for her case in West Virginia, Byers agreed to cooperate with Jefferson County law enforcement as a confidential informant in controlled drug purchases.  Byers was able to provide McGowan's phone

number, car description, and current and past known addresses.

{¶5} On December 5, 2008, detectives Jason Hanlin and Thomas Ellis arranged with Byers to conduct a controlled buy of $100.00 worth of crack cocaine from McGowan. Byers made a series of phone calls to McGowan, which were observed and recorded by Hanlin and Ellis. The detectives provided Byers with $100.00 of pre-recorded bills, and Ellis searched Byers and her vehicle prior to her meeting with McGowan. McGowan met with Byers during the evening of December 5, 2008, and completed the drug sale at an intersection near 140 McDowell Avenue in Steubenville, under the observation of Hanlin and Ellis. Byers was wearing a recording device that captured some of the brief conversation that occurred between Byers and McGowan during the drug transaction. After the transaction, Ellis again searched Byers and her vehicle, and Byers handed over the purchased item, which was confirmed to be 0.8 grams of crack cocaine.

{¶6} On December 8, 2008, the same two detectives and informant set up a second controlled buy for an additional $100.00 worth of crack cocaine from McGowan. Byers again made a series of phone calls to McGowan at the same number, and their telephone conversations were observed and recorded by Hanlin and Ellis. The detectives again provided Byers with $100.00, fitted her with a recording device, and searched her and her car prior to the drug transaction. Byers returned to the same intersection near 140 McDowell Avenue. Another individual, Harry Stackhouse, Jr., emerged from McGowan's house, entered Byers's car, completed the drug transaction, and returned to McGowan's house. The detectives again observed the transaction under cover, and Byers's recording device was able to capture the conversation between Byers and Stackhouse in Byers's car. The detectives were able to take pictures, as this second transaction occurred during daylight hours. After the transaction, Ellis again searched Byers and her vehicle, and Byers handed over the purchased item, which was confirmed to be 0.7 grams crack cocaine.

{¶7} The detectives then obtained a search warrant for the house at 140 McDowell Avenue, where McGowan had been located around the times of the drug transactions. The officers searched the house on December 10, 2008. The officers

found $148.00 on McGowan's person, and another $1000.00 in $20.00 bills in the pocket of a child's coat in the house. During his arrest, McGowan stated that he had been out of town for days and did not know why they were arresting him.

{¶8} On February 4, 2009, a grand jury indicted McGowan on two counts of trafficking in drugs in violation of R.C. 2925.03(A)(1). McGowan's case proceeded to a jury trial on June 2, 2009. At trial, the State offered the testimony of Detectives Jason Hanlin and Thomas Ellis, as well as Harry Stackhouse, Jr., who was incarcerated for his participation in the above-described drug transaction. McGowan did not present any witnesses for his case in chief. The parties stipulated that the jury was to proceed with a forfeiture determination during their deliberations, in lieu of a separate proceeding and determination. The jury returned a guilty verdict for both trafficking charges, and a finding that $500.00 of the $1,148.00 seized was subject to forfeiture.

{¶9} The trial court held a sentencing hearing the following day, on June 3, 2009. The trial court explained its sentencing determination according to the sentencing guidelines, and noted McGowan's high chance of recidivism, failure to favorably respond to past sanctions, and lack of genuine remorse. The trial court then imposed the maximum term of twelve months for each conviction, and chose to run the sentences consecutively. The trial court imposed the $500.00 forfeiture, but did not impose any further fines or restitution.

### Sufficiency of the Evidence

{¶10} In his first of three assignments of error, McGowan asserts:

{¶11} "The jury verdict finding the appellant guilty of two (2) counts of trafficking in crack cocaine was against the manifest weight of the evidence."

{¶12} McGowan contends that both of his convictions were against the manifest weight of the evidence. In the body of this assignment of error, McGowan also asserts that his convictions were based on insufficient evidence. An evaluation of the sufficiency of the evidence and an evaluation of the weight of the evidence are two distinct processes. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 1997-Ohio-52, 678 N.E.2d 541. Thus, these two concepts will be addressed separately.

{¶13} Sufficiency of the evidence is a question of law that tests adequacy rather than the more discretionary weighing of the evidence. *Thompkins* at 386. In reviewing the record for sufficiency, the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime to have been proven beyond a reasonable doubt. *State v. Smith,* 80 Ohio St.3d 89, 113, 1997-Ohio-355, 684 N.E.2d 668.

{¶14} The crimes in question, two counts of trafficking in cocaine, require proof that McGowan twice knowingly sold or offered to sell cocaine or a compound containing cocaine. R.C. 2925.03(A)(1),(C)(4). The State presented evidence that McGowan spoke with Byers on the telephone on December 5, 2008 to coordinate a sale of crack cocaine, met with Byers that evening, and received $100.00 from Byers in exchange for a substance that tested presumptive-positive for cocaine, and was confirmed by the Ohio Bureau of Criminal Investigation and Identification ("BCI") laboratory to be 0.8 grams of crack cocaine.

{¶15} The State further presented evidence that McGowan spoke with Byers on the telephone on December 8, 2008 to coordinate a sale of crack cocaine. Another individual, Stackhouse, left from McGowan's house to meet with Byers to complete the sale, and returned to McGowan's house after the sale. The substance received from Stackhouse on that date tested presumptive-positive for cocaine, and was confirmed by the BCI laboratory to be 0.7 grams of crack cocaine. Although McGowan was not physically present during the completion of the second crack cocaine sale, his telephone coordination of the sale alone satisfies the elements of R.C. 2925.03(A)(1),(C)(4).

{¶16} Viewing this evidence in a light most favorable to the State, a rational fact finder could have found that McGowan knowingly sold crack cocaine to Byers on December 5, 2008 and again on December 8, 2008. McGowan's convictions were therefore based on sufficient evidence.

### Manifest Weight

{¶17} We now turn to the separate issue of whether McGowan's convictions were against the manifest weight of the evidence. When a court conducts a manifest-weight

analysis, it weighs all of the evidence and reasonable inferences, considers the credibility of each witness, and determines whether the fact-finders clearly lost their way in resolving conflicts in the evidence to the point that they "created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Thompkins* at 387.

{¶18} The manifest-weight analysis is a broader inquiry into the original trial, but only allows for a reversal in exceptional circumstances. Id. This is because the trier of fact was in the best position to determine the credibility of the witnesses and the weight due to the evidence. *State v. DeHass* (1967), 10 Ohio St.2d 230, 231, 39 O.O.2d 366, 227 N.E.2d 212. Thus the reviewing court must determine whether the appellant or the appellee provided the more believable evidence, but must not completely substitute its judgment for that of the original trier of fact "unless it is patently apparent that the factfinder lost its way." See *State v. Woullard*, 158 Ohio App.3d 31, 2004-Ohio-3395, 813 N.E.2d 964, at ¶81.

{¶19} McGowan lists three factors in support of his manifest weight argument: an untrustworthy confidential informant, poor visibility conditions during the December 5, 2008 drug sale, and witness testimony exculpating McGowan from the December 8, 2008 drug sale.

{¶20} First, McGowan argues that Byers's participation in both drug transactions was suspect because she was an admitted drug abuser receiving consideration for her participation in the controlled buys, and did not testify at McGowan's trial. McGowan further asserts that the police did not properly search Byers before and after the controlled buys. McGowan does not explain how Byers's suspiciousness caused his convictions to be against the manifest weight of the evidence, but we will infer that McGowan is asserting that the crack cocaine given to the detectives by Byers had been planted by Byers rather than procured from McGowan.

{¶21} Detective Hanlin testified that when Byers made telephone calls to McGowan to coordinate the drug purchases on December 5 and 8, both Hanlin and Ellis supervised and recorded the phone conversations. Hanlin testified that Ellis searched Byers and her car before and after her meeting with McGowan, though Hanlin admitted

that male police searches of female informants are less thorough than those of male informants. Detective Ellis testified that he conducted the searches of Byers before and after the controlled buys, and he explained that he searched her outer clothing, shoes and socks, but did not search her underwear. Hanlin testified that he and Ellis monitored Byers the entire time from her departure from their office, to her arrival near 140 McDowell Avenue for the drug buys, to her return to their office.

{¶22} Although it is certainly conceivable that a confidential informant might wish to frame an associate in exchange for favorable treatment from law enforcement, the evidence produced at trial does not provide any indication that Byers did so. Given the detectives' explanation of their close monitoring of Byers throughout both transactions, the jury did not lose its way in believing that the controlled buys on December 5 and 8 did not involve misfeasance by Byers.

{¶23} Second, McGowan argues that the low light and far distance undermined the detectives' ability to view any actual exchange of money or drugs during the December 5, 2008 controlled buy. The December 5 controlled buy took place out of doors at night, and the detectives observed the exchange from a distance in order to remain under cover. Both Hanlin and Ellis testified that they were too far away to observe the actual exchange of money and drugs between McGowan and Byers on December 5, 2008.

{¶24} At trial, the State played a recording of the supervised telephone calls made by Byers on December 5, and Hanlin identified the voices in the conversations as Byers and McGowan. Hanlin testified that he was able to identify McGowan because he has known McGowan for some time. The State played a recording of the brief conversation that occurred between Byers and McGowan during their December 5, 2008 meeting, while the detectives observed from a distance. The detectives observed Byers as she met with McGowan at the intersection near 140 McDowell Avenue on December 5. Although it was dark out, Hanlin testified that he was able to positively identify McGowan because he was personally familiar with McGowan, and because the intersection was well-lit.

**{¶25}** The detectives searched Byers before and after the transaction with McGowan, and were able to monitor her activity during the entire span of time. Thus, the detectives were able to verify that Byers met McGowan with $100.00 and no crack cocaine, and left McGowan without the money and with 0.8 grams of crack cocaine. Given this strong circumstantial evidence, the jury did not lose its way in deciding that an exchange of crack cocaine and money took place between Byers and McGowan on December 5, even though the detectives were unable to personally see the items changing hands.

**{¶26}** Third, McGowan points out that witness Stackhouse claimed that he was solely responsible for the December 8, 2008 drug transaction, and that McGowan was in no way involved.

**{¶27}** Stackhouse testified as a witness for the State, and was already incarcerated for his participation in the December 8, 2008 controlled buy. Stackhouse testified that he had been involved in the drug business since the age of twelve. Stackhouse testified that he had known McGowan since the age of twelve, and that his step-father is related to McGowan.

**{¶28}** Stackhouse testified that he had used McGowan's mobile telephone to call Byers regarding a drug purchase, and that although McGowan answered the telephone when Byers called back on December 8, McGowan did not know who Byers was and was not involved with the drug purchase. Stackhouse overheard McGowan stating on the telephone that he did not sell drugs. Stackhouse did not personally speak with Byers on his own mobile telephone until after the drug purchase had occurred.

**{¶29}** Stackhouse testified that after McGowan talked to Byers on the telephone, McGowan told Stackhouse that Byers had asked for $100.00 worth of drugs. McGowan was angry with Stackhouse for using his phone, since McGowan did not sell drugs. On cross-examination, Stackhouse testified that he regularly used McGowan's mobile telephone for calls and text messages, though he did not have permission to use McGowan's mobile telephone for drug activities. When asked how he knew where to meet Byers to complete the drug transaction on December 8, 2008, Stackhouse

explained that after McGowan hung up on Byers, McGowan told him that Byers had called, asked for $100.00 of drugs, and was on Euclid Street.

{¶30} However, the State played the recording of the telephone conversation between Byers and McGowan on December 8, 2008, which included the following interactions:

{¶31} "Mr. McGowan: Yo.

{¶32} "Ms. Byers: Hey, I'm ready. You ready?

{¶33} "Mr. McGowan: Yeah.

{¶34} "Ms. Byers: Can I work with a 50 or I got to have more?

{¶35} * *

{¶36} "Ms. Byers: All right. Can you hear me?

{¶37} "Mr. McGowan: Yeah.

{¶38} "Ms. Byers: All right. You got a 50?

{¶39} "Mr. McGowan: No.

{¶40} "Ms. Byers: I got to do a buck?

{¶41} "Mr. McGowan: Yeah.

{¶42} "Ms. Byers: All right. I'll be there in like ten, maybe even five. Where you want me to go?

{¶43} "Mr. McGowan: Same spot.

{¶44} "Ms. Byers: All right. I'll be there in five minutes.

{¶45} "Mr. McGowan: All right."

{¶46} Additionally, Stackhouse testified that he had conducted other drug sales with Byers prior to the December 8, 2008 transaction. Stackhouse had not yet heard the recording of his December 8, 2008 conversation with Byers during the drug transaction, and the State re-played the recording, which included the following interaction:

{¶47} "Ms. Byers: You? All right. I needed to order an 8 ball. Is that all you got left?

{¶48} "Mr. Stackhouse: I'm not sure.

{¶49} "Ms. Byers: (Inaudible). You ain't got nothing more than that?

{¶50} "Mr. Stackhouse: That's all he's got right there.  That's all you need.

{¶51} "Ms. Byers: Do you got anything?

{¶52} "Mr. Stackhouse: I ain't got nothing.  I'm out till later on.

{¶53} "Ms. Byers: Well, can I get your number for when he's out?

{¶54} * *

{¶55} "Ms. Byers: What's your name?

{¶56} "Mr. Stackhouse: White-G.

{¶57} "Ms. Byers: White-G?

{¶58} "Mr. Stackhouse: Yeah.

{¶59} "Ms. Byers: All right. Thanks."

{¶60} Stackhouse admitted that on the recording, Byers asked Stackhouse what his name was and did not know his telephone number.  Stackhouse explained that he gave Byers his own telephone number for the first time because McGowan had gotten angry with him for using his telephone.  Stackhouse was not able to explain why Byers did not know his name.

{¶61} The above recorded conversations between McGowan and Byers, and between Stackhouse and Byers, undermined Stackhouse's claims that McGowan did not sell drugs and did not know who Byers was.  The State's evidence that McGowan had previously met with Byers on December 5, 2008 further impeached Stackhouse's statement that McGowan did not know who Byers was.  Given that Stackhouse's specific claims, as well as his overall credibility, was undermined by strong conflicting evidence from the State, the jury did not lose its way in choosing to disbelieve Stackhouse's claim that McGowan was in no way involved with the December 8, 2008 sale of crack cocaine.

{¶62} Given the foregoing, the State provided substantial evidence indicating that McGowan knowingly sold crack cocaine to Byers on December 5, 2008 and December 8, 2008.  The jury's decision to resolve credibility issues and any evidentiary conflicts in favor of the State was not unreasonable, let alone a manifest miscarriage of justice.  McGowan's convictions were therefore not against the manifest weight of the evidence, and his first assignment of error is meritless.

**Sentencing**

{¶63} In his second assignment of error, McGowan asserts:

{¶64} "The trial court abused its discretion in sentencing the appellant to a definite term of twenty-four (24) months in prison."

{¶65} McGowan contends that the trial court failed to impose a sentence that was consistent with the Ohio sentencing guidelines. Specifically, McGowan claims that the sentencing court abused its discretion because it did not state that McGowan had no record of delinquency adjudications, and did not state any facts to support its finding that McGowan showed no genuine remorse. McGowan also generally asserts that the sentencing court made no findings to support its decision to impose maximum consecutive sentences.

{¶66} When reviewing the constitutionality of a felony sentence, an appellate court must determine first whether the defendant has shown by clear and convincing evidence that the sentence is contrary to law, and second whether the court committed an abuse of discretion. *State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124, at ¶4. As for the first step, a trial court's sentence would be contrary to law if, for example, it were outside the statutory range, in contravention of a statute, or decided pursuant to an unconstitutional statute. *Kalish* at ¶36; *State v. Thomas*, 7th Dist. No. 06 MA 185, 2008-Ohio-1176, at ¶16. As for the second step, a reviewing court must determine whether the trial court abused its discretion in applying R.C. 2929.11 and R.C. 2929.12. *State v. Gratz*, 7th Dist. No. 08-MA-101, 2009-Ohio-695, at ¶8, citing *Kalish* at ¶13-14. An abuse of discretion is more than a mere error of law or judgment; it constitutes an unreasonable, arbitrary or unconscionable use of discretion. *Kalish* at ¶19.

{¶67} McGowan's convictions were of two fifth degree felony violations of R.C. 2925.03(A)(1),(C)(4)(a). The statutory range for a fifth degree felony is between six and twelve months. R.C. 2929.14(A)(5). McGowan received a sentence of twelve months for each conviction, thus within the statutory range. McGowan does not otherwise argue that the sentences were contrary to law, and instead argues that they were an abuse of discretion under the second prong of the *Kalish* analysis.

{¶68} McGowan seems to contend that the trial court was required to make specific findings to support its decision to impose maximum consecutive sentences, and failed to do so. McGowan also contends that the trial court was required to express that it had considered McGowan's lack of juvenile adjudications, and provide factual findings to support its statement that McGowan failed to show remorse.

{¶69} When considering the purposes and principles of sentencing under R.C. 2929.11 and the seriousness and recidivism factors under R.C. 2929.12, a trial court does not need to state its specific reasoning on the record or in its judgment entry as to how or why particular factors in those statutes apply to the case under consideration. *Kalish*, supra, at ¶18, fn. 4; *State v. Arnett*, 88 Ohio St.3d 208, 215, 2000-Ohio-302, 724 N.E.2d 793; *State v. James*, 7th Dist. No. 07 CO 47, 2009-Ohio-4392, at ¶50.

{¶70} McGowan had a considerable criminal record, specifically involving repeated drug offenses. Thus the court's conclusion regarding McGowan's likelihood of recidivism was well-supported. The sentencing court was not required to list all factors contained in the sentencing guidelines, thus the fact that the sentencing court did not specifically discuss McGowan's juvenile record was inconsequential. Further, the sentencing court was not required to state factual findings to support any specific conclusions that it did state, thus the court's failure to state facts supporting its lack of remorse finding was not an abuse of discretion.

{¶71} The sentencing court did state that it considered the purposes and principles of sentencing under R.C. 2929.11 and the seriousness and recidivism factors under R.C. 2929.12, both on the record at the June 3, 2009 sentencing hearing, and in its June 5, 2009 judgment entry. The trial court explained its analysis according to the sentencing guidelines, and noted McGowan's high chance of recidivism, failure to favorably respond to past sanctions, and lack of genuine remorse. Thus, the sentencing decision did not constitute an abuse of discretion.

{¶72} Because the maximum consecutive sentences imposed by the trial court were not contrary to law, and did not involve any abuse of discretion, McGowan's second assignment of error is meritless.

**Forfeiture**

{¶73} In his third assignment of error, McGowan asserts:

{¶74} "The trial court committed reversible error in ordering the forfeiture of $500.00."

{¶75} McGowan contends that the State failed to prove by a preponderance of the evidence that $500.00 of the money seized during McGowan's arrest was subject to forfeiture. McGowan asserts that the State did not present any evidence linking the seized money with any illegal enterprise, and thus that the jury's finding that any of the money should be forfeited was erroneous.

{¶76} A forfeiture action, while criminal in nature, is a civil proceeding against the seized property. *State v. Casalicchio* (1991), 58 Ohio St.3d 178, 181, 569 N.E.2d 916; *State v. Watkins*, 7th Dist. No. 07 JE 54, 2008-Ohio-6634, at ¶31. As of July 1, 2007, R.C. Chapter 2981 governs forfeiture specifications. When a defendant is convicted of a felony drug offense, the trier of fact normally considers separately whether any of the property listed in the forfeiture specification in the defendant's indictment should ultimately be forfeited. R.C. 2981.04(B). Here, McGowan stipulated that the jury was to proceed with a forfeiture determination during its primary deliberations, in lieu of a separate proceeding and determination.

{¶77} The trial court instructed the jury that if they reached a guilty verdict on the second count of trafficking in cocaine, they were to proceed to a forfeiture determination. The trial court instructed that the jury should "return a verdict of forfeiture if you find by the greater weight of the evidence that the [seized $1,148.00 or any portion thereof] constituted or was derived directly or indirectly from any proceeds that the defendant obtained directly or indirectly from the commission of trafficking in cocaine." The language of the trial court's instruction indicates that the seized currency was identified as "proceeds" pursuant to R.C. 2981.01(B)(11)(a) and R.C. 2981.02(A)(2).

{¶78} Included in the categories of property subject to forfeiture under Ohio law are "[p]roceeds derived from or acquired through the commission of an offense." R.C. 2981.02(A)(2). In the context of an offense involving unlawful goods, proceeds are

defined as "any property derived directly or indirectly from an offense," including money, and "not limited to the net gain or profit realized from the offense." R.C. 2981.01(B)(11)(a). Thus, the finder of fact is not limited to the underlying offense when determining whether to forfeit alleged proceeds. The action may proceed against property derived from any act considered to be a felony drug offense, regardless of the subsequent charges, convictions, or lack thereof. *Watkins*, at ¶31, *State v. Brownridge*, 3d Dist. No. 9-09-24, 2010-Ohio-104, at ¶25. However, the law generally does not favor forfeiture, and such statutes must be strictly construed against the State. *State v. Hill,* 70 Ohio St.3d 25, 31, 1994-Ohio-12, 635 N.E.2d 1248; *State v. Lilliock* (1982), 70 Ohio St.2d 23, 24 O.O.3d 64, 434 N.E.2d 723.

{¶79} Pursuant to R.C. 2981.04, if a defendant is convicted of an offense where the indictment contained a forfeiture specification, the "trier of fact shall return a verdict of forfeiture that specifically describes the extent of the property subject to forfeiture," if the State is able to prove "by a preponderance of the evidence that the property is in whole or part subject to forfeiture." R.C. 2981.04(B). When reviewing a judgment based on a preponderance of the evidence standard, an appellate court must not substitute its judgment for that of the finder of fact if there is "some competent, credible evidence going to all the essential elements of the case." *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578, at syllabus. Therefore, as long as there is some competent, credible evidence that $500.00 of the currency seized during McGowan's arrest was derived directly or indirectly from the commission of a drug offense, the forfeiture decision must not be disturbed.

{¶80} There are a number of factors that might indicate that seized currency was derived from a drug offense, such as if the currency includes marked bills from a controlled buy, if the currency is a large sum in small denominations, if it was found with items associated with the drug trade, or if the defendant was caught in the act of selling drugs. *Watkins* at ¶36-41.

{¶81} In support of his argument, McGowan points out that the money was seized on December 10, 2008, days after the controlled buys. McGowan further points out that

none of the pre-recorded $200.00 used during the controlled buys was found, and no crack cocaine was found at the residence at 140 McDowell. McGowan further indicates that he did not live at 140 McDowell, and that multiple people lived at that residence.

**{¶82}** In support of the forfeiture, the State points out that $1000.00 of the money seized was hidden in a child's coat, in the house used by McGowan and other participants during the two drug transactions. The currency was found in proximity to McGowan's mobile telephone, which was used to conduct the drug sales and contained text messages discussing other additional drug transactions.

**{¶83}** Additionally, other items seized during McGowan's arrest included a small bag of marijuana, a pistol magazine, a camera, and multiple mobile telephones. The police also found bills in McGowan's name, with his address listed as 140 McDowell Avenue. During Detective Hanlin's testimony, he indicated that McGowan's girlfriend, Ashley Woods, attempted to claim the $1000.00 as hers at the time of McGowan's arrest, but she made no further contact with the police regarding that money after they requested that she bring proof of her claim.

**{¶84}** Hanlin testified that, when looking through the mobile telephone identified as McGowan's, Hanlin found a text message from December 7, 2008, that referenced a drug transaction. Specifically, the text message shown in Exhibit 16 is listed in the "Outbox," which indicates that the message was sent by McGowan to someone else. The message states "U let me get 1 4, 500 an i gave u 500 an da morning." According to Hanlin's interpretation, the text message referenced a transaction of one ounce of drugs in exchange for two payments of $500.00.

**{¶85}** Stackhouse testified that he had used McGowan's mobile telephone to coordinate drug deals via text message, and also claimed that the $1000.00 seized was his rather than McGowan's. However, given the review of Stackhouse's testimony in the first assignment of error, the jury did not find Stackhouse to be a completely credible witness. Moreover, Stackhouse stated during his testimony that the $1000.00 was in denominations of 20 and 10, then stated that the money was in denominations of 50 and 10. When the State presented the seized currency, which did not include any

denominations of 10, Stackhouse stated that he had been high at the time, and did not remember. Thus Stackhouse's credibility specific to the forfeiture issue was further undermined. Insofar as Stackhouse's claims attempted to indicate a legitimate alternative source of the money seized from McGowan, the State sufficiently discredited Stackhouse's claims for the purposes of forfeiture.

**{¶86}** Because the State presented evidence that the seized money was hidden in the coat of a child who would not have been the owner of that money, in the house associated with the controlled buys for which McGowan was arrested and convicted, and because McGowan's mobile telephone records indicated that he had probably recently exchanged drugs and money in the amount of $500.00 or $1000.00, the State met its relatively low burden of proof. McGowan did not present evidence to refute the forfeiture specification. Although there is not strong evidence that the specific money found at the time of McGowan's arrest belonged to McGowan and was derived from the commission of a drug offense, there is at least some competent credible evidence that it was. Thus, McGowan's third assignment of error is meritless, and the forfeiture decision will not be disturbed.

**{¶87}** In conclusion, McGowan's convictions for trafficking in cocaine were based upon sufficient evidence and were not against the manifest weight of the evidence, and the sentencing decision was neither contrary to law nor an abuse of discretion. Further, there were few, but adequate factors supporting a forfeiture of $500.00 of the money seized at the time of McGowan's arrest. Accordingly, the judgment of the trial court is affirmed.

Donofrio, J., concurs.

Waite, J., concurs.