[Cite as *State v. Burch*, 2013-Ohio-4256.]

STATE OF OHIO, JEFFERSON COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO, | ) | |
| | ) | CASE NO.    12 JE 28 |
| PLAINTIFF-APPELLEE, | ) | |
| | ) | |
| VS. | ) | O P I N I O N |
| | ) | |
| SAMANTHA BURCH, | ) | |
| | ) | |
| DEFENDANT-APPELLANT. | ) | |

CHARACTER OF PROCEEDINGS:      Criminal Appeal from Common Pleas
                               Court, Case No. 10CR164.

JUDGMENT:                      Affirmed.


APPEARANCES:
For Plaintiff-Appellee:        Attorney Jane Hanlin
                               Prosecuting Attorney
                               16001 State Route 7
                               Steubenville, Ohio  43952



For Defendant-Appellant:       Attorney Bernard Battistel
                               P.O. Box 803
                               Steubenville, Ohio  43952



JUDGES:
Hon. Joseph J. Vukovich
Hon. Gene Donofrio
Hon. Mary DeGenaro


                               Dated:  September 18, 2013

VUKOVICH, J.

{¶1} Defendant-appellant Samantha Burch appeals after pleading no contest to child endangering in the Jefferson County Common Pleas Court. First, she argues that the trial court abused its discretion in sentencing her to the maximum of thirty-six months in prison for this felony of the third degree. Then, she contends that her counsel rendered ineffective assistance by recommending that she plead no contest rather than proceeding to a jury trial. For the following reasons, these arguments are without merit, and the trial court's decision is affirmed.

STATEMENT OF THE CASE

{¶2} On November 19, 2010, the police raided a methamphetamine-making house in Wells Township. During the investigation, the police learned that appellant's one year old child was in the area and in need of medical attention. The child was found with severe burns to her private areas and inner thighs. She was immediately transported to the local hospital and then transferred to a Columbus hospital where she stayed for nearly three weeks.

{¶3} The mother reported to the first hospital that the child had diaper rash, but the physicians stated that the injuries were burns, possibly caused by a liquid or substance. Besides the burns and the resulting infection, the child was severely dehydrated and her urine tested positive for methamphetamine. The child had also bruises on her arm and back and behind her left ear, which did not appear accidental.

{¶4} Appellant was arrested and later indicted for child endangering under R.C. 2919.22(A), which applies when a parent creates a substantial risk to the health or safety of their child by violating a duty of care, protection, or support. The offense was a third degree felony under R.C. 2919.22(E)(2)(c) because the child suffered serious physical harm.

{¶5} On September 12, 2012, appellant pled no contest to the charge. The prosecution recited a statement of the facts, and the court found appellant guilty. The child's paternal grandmother and appellant spoke at sentencing. The grandmother testified that upon the child's admission to the hospital, she was badly

burned, bleeding, underweight, undernourished, and in severe pain. (Tr. 20-21, 23). The child had an infection, and she screamed as her wounds were scrubbed. The grandmother also explained that the child had to be placed on a feeding tube. (Tr. 20).

{¶6} Upon release from the hospital, the child went to live with this paternal grandmother, who was later granted custody. (Tr. 25, 31). The grandmother testified that the mother was entitled to visit with the child two hours per week but stopped visiting in November of 2011 and does not call her. (Tr. 25-26). The grandmother never saw the mother shed a tear over the child. (Tr. 26). She disclosed that when she once asked appellant to change the child's diaper, the mother refused. (Tr. 25).

{¶7} The child still suffers pain from her injury, especially during the required scar massages. (Tr. 23, 27). The grandmother explained that the child will need to undergo "slicing" as she grows because her scar will not grow with her skin. (Tr. 27-28). The grandmother also pointed out that the child had previously been hospitalized as a result of her handling a stripping solvent while under appellant's care. As a result of this exposure, the child was put on a ventilator and underwent a surgery requiring her to have an open abdomen for several days. (Tr. 29, 38).

{¶8} Appellant exercised her right of allocution. She stated that she did change the child's diaper once when the grandmother asked. (Tr. 40-41). With regards to visitation, she stated that it was hard to find a ride, and she complained that the grandmother started making comments that she was the mother now. (Tr. 41). She also stated that the child's father brings the child to her every couple months since she stopped visiting at the grandmother's house. (Tr. 41-42). She claimed that the grandmother stopped responding to her calls so she calls the child's father instead. (Tr. 42-43). Appellant stated that she received her GED several months ago but had no certificate because it costs extra. (Tr. 43). She then revealed that she has a ten-week old child. (Tr. 43).

{¶9} As for the incident at issue, she claimed that five or six days prior to the incident, a babysitter noticed diaper rash but thought it cleared up. When this babysitter was too sick to care for the child, she left her daughter with a man (who

was the father of her nephew and who she called her child's "uncle") while she went to work at a strip bar and so that she could abuse methamphetamine. (Tr. 46, 55, 60). She stated that she and others had suspicions that this man was abusive to her daughter in the past as her daughter had previously suffered a burn from a space heater and a bruise on her check while with him. (Tr. 46-47). Still, it seems she left her daughter with him for days. (Tr. 46).

{¶10} She stated that she retrieved the crying child one night and slept with the child that night. She claimed that she noticed the injuries when she changed the child's diaper the next day and the police then "thankfully" arrived. (Tr. 48). She estimated that she had not changed her daughter's diaper in three days as the child had been with others. (Tr. 48).

{¶11} She denied telling the officers that she put petroleum jelly over the burns two days before the raid and insisted that it was diaper rash or the old space heater burn that she had been treating and that the burns were new and must have happened while at the "uncle's" house. (Tr. 61). She stated that she did not recall telling the officers that she could not bathe the child for the past two days because the water hurt the injuries. (Tr. 61-62).

{¶12} She conceded that she was on methamphetamine at the time, which makes a person "not comprehend what really is going on in life." (Tr. 46, 53, 58, 62). She admitted that it "somewhat" makes one not take care of their child but claimed that she would still know that her child needed diapers for instance. (Tr. 53). When asked why she did not immediately seek help for the child's injuries, she claimed, "I had no way to call for anybody. I had no idea where I was. I had only been to that Dillonvale home that one time and that was that night." (Tr. 54).

{¶13} Appellant also stated that she did not remember disclosing to officers that she did not bring the child to the hospital because they would call Children's Services again. (Tr. 53-54, 62). She did remember telling the officers that she believed the man she left the child with may have been physically or sexually abusing the child (even before she last left the child there). (Tr. 59, 62). She also admitted

that she left her child with him even though she knew he was also "bad on meth." (Tr. 62).

**{¶14}** Regarding the child's prior hospitalization, appellant explained that they were visiting her roofer friend who had a drink bottle on his floor containing roofing solvent. (Tr. 49). The child dumped the bottle on herself and in her mouth. (Tr. 50). She was asked if roof stripper was a common ingredient in making methamphetamine to which she responded that she did not know. (Tr. 52).

**{¶15}** Photographs depicting horrific injuries to the child's private areas and inner thighs were submitted into the record. (Tr. 22-23). The prosecutor stated that these photographs were more disturbing than in any other child endangering case that has come through the court. (Tr. 64). The prosecutor suggested that the burns were caused by the child sitting in methamphetamine-making fluids. (Tr. 66). She also noted that this one-year old child had two life-threatening experiences within a few months' time due to the mother's lack of regard and stated that roof stripper is a common ingredient in meth labs. (Tr. 66). Finally, she opined that the mother is callous and not remorseful. (Tr. 67).

**{¶16}** The defense noted that the defendant was 21 years old when this happened, her only prior conviction was for disorderly conduct, and her only juvenile issues were with truancy. (Tr. 68-69). Defense counsel opined that appellant seemed sincere in expressing remorse. (Tr. 69). Counsel also pointed out that a community-based corrections facility had expressed that appellant was appropriate for placement there. (Tr. 70). Counsel asked the court to recognize how appellant has tried to better herself since the arrest by getting her GED, staying out of trouble, and stopping her drug use. The defense urged the court to consider a non-prison sanction. (Tr. 70).

**{¶17}** Appellant then spoke again, expressing that she loves her daughter and that she cries herself to sleep every night because of what happened to her daughter (also complaining that the person who did this is "out running free"). (Tr. 71-73). She admitted that she "messed up as being a mother" but stated that she has changed and learned her lesson. (Tr. 71-72). She claimed that she has been sober "going on

three years" as she was going to her sister's drug court meetings and attending other group meetings. (Tr. 72). (Her estimate must have been mistaken as it had been less than two years since the offense.)

**{¶18}** The court opined that the facts do not support her claim that the injuries happened the night before the raid as some of the injuries were beginning to heal and do not support appellant's claim that she did not know about the injuries during the night (since the child would have been screaming). (Tr. 73, 75-76). The court expressed that the neglect of the child was over a sustained period. (Tr. 73-74). The court found her claim that she could not telephone anyone to lack credibility. (Tr. 74). The court pointed out that the time for a change in her mothering would have been after the roof stripper incident. (Tr. 74-75). The court agreed with the state's characterization of this as being one of the worst child endangering cases encountered. (Tr. 75). The court then sentenced appellant to thirty-six months in prison, the maximum sentence for a third-degree felony.

**{¶19}** On November 9, 2012, appellant filed an untimely appeal from the September 18, 2012 sentencing entry. This court granted her request to file a delayed appeal because the trial court had ordered trial counsel to file the notice of appeal as his last official act, but trial counsel apparently believed appellate counsel would file the appeal. (Tr. 80).

<u>ASSIGNMENT OF ERROR NUMBER ONE</u>

**{¶20}** Appellant sets forth two assignments of error, the first of which provides:

**{¶21}** "THE IMPOSITION OF THE MAXIMUM PERIOD OF INCARCERATION AGAINST THE DEFENDANT IS CONTRARY TO O.R.C. § 2929.11 AND § 2929.12."

**{¶22}** Pursuant to R.C. 2929.11(A), a court sentencing a defendant for a felony shall be guided by the overriding purposes of felony sentencing, which are to protect the public from future crime by the offender and others and to punish the offender using the minimum sanctions that the court determines accomplish those purposes without imposing an unnecessary burden on state or local government

resources. R.C. 2929.11(A). The court shall consider the need for incapacitating the offender, deterring the offender and others from future crime, rehabilitating the offender, and making restitution to the victim of the offense, the public, or both. *Id.* Thus, a sentence imposed for a felony shall be reasonably calculated to achieve these two overriding purposes, commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim, and consistent with sentences imposed for similar crimes committed by similar offenders. R.C. 2929.11(B).

{¶23} The sentencing court has discretion to determine the most effective way to comply with the purposes and principles of sentencing. R.C. 2929.12(A). In exercising that discretion, the court shall consider the statutory seriousness and recidivism factors and may consider any other relevant factors. *Id.*

{¶24} Factors that indicate the defendant's conduct is more serious than conduct normally constituting the offense include: (1) the physical or mental injury suffered was exacerbated because of the victim's physical or mental condition or age; (2) the victim suffered serious physical, psychological, or economic harm; (3-5) dealing with public office, position of trust in the community, occupation, elected office, or professional reputation; (6) the offender's relationship with the victim facilitated the offense; (7) dealing with organized criminal activity; (8) dealing with prejudice; and (9) certain offenses involving a family or household member in the vicinity of other children. R.C. 2929.12(B)(1)-(9).

{¶25} Factors that indicate the defendant's conduct is less serious than conduct normally constituting the offense include: (1) the victim induced or facilitated the offense; (2) the offender acted under strong provocation; (3) the offender did not cause or expect to cause physical harm to any person or property; and (4) there are substantial grounds to mitigate the offender's conduct, although the grounds are not enough to constitute a defense. R.C. 2929.12(C)(1)-(4).

{¶26} Factors that indicate the offender is likely to commit future crimes include: (1) at the time of the offense, the offender was under pretrial release, post-release control, or certain other sanctions; (2) the offender previously was

adjudicated a delinquent child, or the offender has a history of criminal convictions; (3) the offender has not been rehabilitated to a satisfactory degree after previously being adjudicated a delinquent child, or the offender has not responded favorably to sanctions previously imposed for criminal convictions; (4) the offender has demonstrated a pattern of drug or alcohol abuse that is related to the offense, and the offender refuses to acknowledge that pattern or refuses treatment; and (5) the offender shows no genuine remorse for the offense.  R.C. 2929.12(D)(1)-(5).

**{¶27}** Factors that indicate that the offender is not likely to commit future crimes include:  (1) the offender had not previously been adjudicated a delinquent child; (2) the offender had not previously been convicted of or pleaded guilty to a criminal offense; (3) the offender previously led a law-abiding life for a significant number of years; (4) the offense was committed under circumstances not likely to recur;  and  (5)  the  offender  shows  genuine  remorse  for  the  offense.   R.C. 2929.12(E)(1)-(5).

**{¶28}** Contrary to appellant's suggestion, the trial court did indicate that it considered the purposes of felony sentencing and that it weighed the seriousness and recidivism factors.  The court's judgment entry stated that the court considered the record, the oral statements, the impact on the victim, the purposes and principles of sentencing under R.C. 2929.11, the seriousness and recidivism factors under R.C. 2929.12.

**{¶29}** The court made pronouncements about its impressions before imposing the sentence.  The court's entry sets forth various statements regarding the facts of the case, making references to the severity of the burns, the serious and permanent nature of the injury, the future surgeries to the scar tissue, the mother's use of methamphetamine at the time, her perceived knowledge of the injuries, the failure to seek medical care, the severe dehydration, the child's positive methamphetamine test, the conclusion that the child would have died within a day or two had the raid not occurred, and the prior life-threatening injury while under the mother's supervision.

**{¶30}** The court also expressed that appellant appears to have no remorse or empathy for the child, observing that she is only upset that she is going to prison. The court pointed to the photographs as evidence of the severity of the injuries and as evidence of the obvious need for medical assistance. The court also reiterated its conclusion from the sentencing hearing that this was the worst form of the offense.

**{¶31}** Thus, it cannot be said that the trial court failed to make the requisite considerations. In any event, explanations regarding the trial court's consideration of R.C. 2929.11 and R.C. 2929.12 are not required at the sentencing hearing or in the sentencing entry. *See State v. McGowan*, 7th Dist. No. 09JE24, 2010-Ohio-1309, ¶ 69.

**{¶32}** This leaves us with appellant's argument that imposition of a maximum sentence is an abuse of discretion, citing *State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124, ¶ 4 for the standard of review. However, it cannot be said that the trial court abused its discretion in sentencing appellant to a maximum sentence upon considering all of the circumstances of the case, including those contained in the presentence investigation. Weighing heavily against appellant are the age of the child, appellant's position as the victim's mother, the seriousness of the injury, the victim's future suffering both physically and emotionally, the drug involvement and culture, the lack of care at the time, and the perceived lack of real remorse now.

**{¶33}** More specifically, at the time of the incident, the mother was impaired to the extent that she was unable "to comprehend what is really going on in life" due to her methamphetamine use while with her child; yet, she was able to work at a strip bar to fund her habit. While so working, she left her one-year old daughter with a man whom she knew was "bad on meth" and whom she suspected would both sexually and physically abuse her child and then went without caring for the child for days. Even assuming for sake of argument that she was not present during the exposure to the substance causing the burns, when appellant finally retrieved her child in the middle of the night, the child was screaming. Yet, supposedly appellant

did not discover the injuries until the next day just as the police were investigating the area after a drug raid.

{¶34} As the court pointed out, the injuries were very serious. And, the child was suffering an infection and high fever, was dehydrated and noticeably malnourished, and was on methamphetamine herself. The photographs establish how unreasonable it would be for someone not to immediately run for help upon seeing the child's bottom and legs and how unreasonable it would be to claim that the child's condition was not ascertained until just prior to the raid. Some scabbing or healing was noted. Notably, most of the wounds are within the diaper area, but many would have protruded lower than the leg of a diaper. In fact, it is almost unimaginable that the child could even withstand being subjected to a diaper rubbing against these wounds. And, appellant's statements to the police belie her statements at sentencing. The court reasonably found a pattern of neglect by this mother culminating in horrific burns to the child's private areas and legs which remained untreated until police happened to be conducting a raid in the area.

{¶35} Moreover, the child's injuries are permanent and require painful scar massages, future monitoring, and surgery to allow for growth. As the court pointed out, this child had already been subjected to life-threatening surgery due to the mother's failure to supervise near a dangerous chemical, also said to be a component of meth-making. Considering this experience to the child mere months prior, the subsequent lack of monitoring was even less forgivable.

{¶36} This also raises concern with the recidivism factor involving whether the circumstances are likely to recur. She claims she has been clean for nearly three years; however, when she made this pronouncement, it had not even been two years since the incident. She had a prior conviction of disorderly conduct and her juvenile record contained truancies. As she was only 21 at the time, her lack of a criminal history is not that mitigating. In addition, the trial court could rationally find a need to protect the public from this defendant and from others like her (and even a need to protect the victim, whom the father leaves with appellant at times, and appellant's

new baby, who was ten weeks old at the time of sentencing and thus conceived with knowledge that this case was pending).

**{¶37}** It was also within the trial court's discretion to conclude that appellant lacked genuine remorse. The court saw her speak and witnessed her behavior throughout the various proceedings. The voice inflections, demeanor, gestures, and eye movements of a speaker are telling aspects of remorse that we do not second-guess. For all of these reasons, the trial court's decision to impose a maximum sentence of thirty-six months is upheld.

<u>ASSIGNMENT OF ERROR NUMBER TWO</u>

**{¶38}** Appellant's second assignment of error contends:

**{¶39}** "DEFENSE COUNSEL RECOMMENDING AND/OR SUGGESTING A PLEA OF NO CONTEST RESULTED IN PREJUDICIAL ERROR AND INEFFECTIVE ASSISTANCE OF COUNSEL."

**{¶40}** In urging that she received ineffective assistance of counsel, appellant briefly posits that there is no hard evidence of how or when the injury was received, and thus, the case should have been tried to a jury. The state cites to the thorough plea colloquy and responds that accepting responsibility and asking for leniency is a sound strategy and that a rational attorney can reasonably conclude that the photographic, medical, and other evidence provided in discovery would deter a jury from concluding that appellant reasonably did not know that the child was injured or how seriously she was injured.

**{¶41}** We review a claim of ineffective assistance of counsel under the two-part test articulated in *Strickland v. Washington*, 466 U.S. 668 104, S.Ct. 2052, 80 L.Ed.2d 674 (1984). Specifically, a reviewing court will not deem counsel's performance ineffective unless a defendant can show his lawyer's performance fell below an objective standard of reasonable representation and that prejudice arose from the lawyer's deficient performance. *State v. Bradley*, 42 Ohio St.3d 136, 142, 538 N.E.2d 373 (1989).

**{¶42}** Our review of counsel's performance is highly deferential as there is a strong presumption that counsel's conduct falls within the wide range of reasonable

professional assistance. *Strickland*, 466 U.S. at 689. And, to show prejudice, a defendant must prove that, but for his lawyer's errors, a reasonable probability exists that the result of the proceedings would have been different. *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* In this context, the defendant must prove that there is a reasonable probability that, but for counsel's errors, she would not have pled guilty. *See Hill v. Lockhart*, 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985).

**{¶43}** Appellant alleges only that counsel should not have recommended that she plead no contest to the charge because maybe a jury could have believed her claim to lack of knowledge of the child's condition. However, she does not allege any actual legal error or deficiency in making a recommendation such as the providing of an incorrect legal standard or a failure to prepare for trial. Moreover, what counsel recommended does not appear to be on the record as appellant does not cite to any portion of the record containing counsel's recommendation. *See, e.g., State v. Dotts*, 2d Dist. No. 2012-CA-107, 2011-Ohio-5202, ¶ 21-22.

**{¶44}** Additionally, appellant's considered decision is evident from the record. That is, ten months after the arrest, appellant decided to plead guilty; she even signed the plea. She then refused to enter her plea on the record and decided to take the case to trial. An independent expert was appointed to review the medical records. It was not until an entire year after her refusal to go through with the original signed guilty plea that she eventually pled no contest. She thus spent much time considering whether a plea was in fact her best option.

**{¶45}** There is no contention that her plea was unknowing or involuntary due to counsel's improper advice. As the state points out, the evidence against her was damning. As the state additionally notes, her own lack of emotion and credibility weighed against her wish for a lesser sentence.

**{¶46}** It is a valid trial tactic to plead to the charge, accept responsibility, and argue in favor of a non-maximum sentence. The strategy did not work here, but ineffective assistance of counsel that does not make. *See State v. Thompson*, 7th Dist. No. 99CA211, 2003-Ohio-2380, ¶ 54, citing *State v. Bird*, 81 Ohio St.3d 582,

585, 692 N.E.2d 1013 (1998) (for the proposition that a decision to enter into a plea agreement rather than proceed to trial is treated as a trial tactic). We refrain from second-guessing an alleged recommendation to accept responsibility in the form of a no contest plea under all of the circumstances herein. This assignment of error is overruled.

{¶47} For the foregoing reasons, the judgment of the trial court is hereby affirmed.

Donofrio, J., concurs.
DeGenaro, P.J., concurs.